UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KARINA GAPCHUK,

       Plaintiff,

v.                                       CASE NO. 8:07-cv-196-T-30EAJ

ROBERT S. MUELLER, et al.,

       Defendants.
_____/

### DEFENDANTS' MOTION TO DISMISS OR REMAND

Defendants, through the undersigned Assistant United States Attorney, move, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss this action, or, alternatively, to remand Plaintiff's naturalization application to the Bureau of Citizenship and Immigration Services (CIS) for further proceedings. Defendants state the following in support.

### BACKGROUND

Plaintiff, a Russian citizen, has been a lawful permanent resident of the United States since December 1, 1996. Complaint, ¶ 6. She applied for naturalization on or about December 1, 2003. Id., ¶ 7. CIS interviewed her on June 25, 2004, and determined that she passed the English proficiency, history and government tests. Id., ¶ 8. CIS, however, informed Plaintiff that it could not adjudicate her application until a pending FBI name check was completed. Id. The undersigned has been informed by the FBI that Plaintiff's name check was completed on June 25, 2007. On January 29, 2007, Plaintiff filed this action to compel Defendants under the Mandamus Act and the

Administrative Procedure Act (APA) to "perform their duty to adjudicate the Application." Id., ¶ 1, Prayer.

## DISCUSSION

The Court lacks subject matter jurisdiction to hear this action. Under 8 U.S.C. § 1447(b), CIS has 120 days from the completion of an examination to adjudicate a naturalization application. That period did not begin to run until, at the earliest, less than two weeks ago, when the FBI completed Plaintiff's name check. Nor does the Mandamus Act or the APA confer jurisdiction because section 1447(b)'s specific limit on jurisdiction supersedes these general statutes. Finally, if the Court finds that it has jurisdiction, it should remand the application to CIS. Remand, as courts have repeatedly found, is preferred because CIS' experience and expertise makes it better suited than the Court to make the naturalization assessment in the first instance.

**I.     Standard of Review**

    **A.     Fed. R. Civ. P. 12(b)(1)**

Subject matter jurisdiction can be challenged facially or factually. See Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990). In a facial challenge, the Court must accept Plaintiff's allegations as true and determine whether he has alleged a sufficient basis for subject matter jurisdiction. Id. at 1529. In a factual challenge, the Court must determine if it has the power to hear the case. Id. In doing so, the Court is not required to assume that Plaintiff's allegations are true and is free to weigh the evidence and evaluate the merits of the jurisdictional claims. Id.

### B. Fed. R. Civ. P. 12(b)(6)

On a motion to dismiss for failure to state a claim, the Court must view the complaint's allegations in the light most favorable to Plaintiff, accept them as true, and and accept all reasonable inferences therefrom. Jackson v. Okaloosa County, 21 F.3d 1532, 1534 (11th Cir. 1994). The complaint, however, must allege "enough factual matter" to suggest that an actionable claim exists. Bell Atlantic Corp. v. Twombley, — U.S. —, 127 S.Ct. 1955, 1965 (May 21, 2007), abrogating Conley v. Gibson, 355 U.S. 41 (1957) (holding that a complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief").

## II. The Court Lacks Subject Matter Jurisdiction

### A. No Jurisdiction under Section 1447(b)

In order to become a naturalized United States citizen, an applicant must meet various statutory requirements, including a sufficient period of residency within the United States and a record of "good moral character." 8 U.S.C. § 1427(a). In determining whether an applicant meets these requirements, the Attorney General or his designee is authorized to "conduct" an "examination[]" of the applicant. 8 U.S.C. § 1446(b). The examination power is broad, encompassing the power "to take testimony . . . , to administer oaths . . . , and to require by subpoena the attendance and testimony of witnesses, . . . and the production of relevant books, papers, and documents." Id.

Since 1997, the examination process has also required a criminal background check of each applicant for naturalization. See Pub. L. No. 105-119, Title I, 111 Stat.

2440, 2448-49 (1997) ("none of the funds appropriated or otherwise made available to [CIS] shall be used to complete adjudication of an application for naturalization unless [CIS] has received confirmation from the [FBI] that a full criminal background check has been completed."). Thus, CIS may adjudicate a naturalization application "only after [it] has received a definitive response from the [FBI] that a full criminal background check of an applicant has been completed." 8 C.F.R. §335.2(b).

Once an examination is complete, CIS is generally expected to adjudicate the application within 120 days. 8 U.S.C. § 1447(b) provides (emphasis added):

> If there is a failure to make a determination under section 1446 of this title **before the end of the 120-day period after the date on which the examination is conducted under such section**, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to [CIS] to determine the matter.

Thus, whether Plaintiff may file her complaint now, and whether the court has jurisdiction to hear that complaint, turns on the meaning of the term "examination," as that is the starting point for the 120-day period. Although a majority of district courts, including this Court, have construed "examination" to refer to the alien's interview, an appreciable number of courts, including the sole court of appeals to address the issue, have construed the term as meaning a process rather than a single event. Compare, e.g., Walji v. Gonzales, — F.3d —, 2007 WL 1747911, at * 2 (5th Cir. June 19, 2007) (holding that 120-day period does not begin to run until CIS receives name check results); Martinez v. Gonzales, 463 F. Supp. 2d 569, 572 (E.D. Va. 2006) with Hussein v. Gonzales, 474 F. Supp.2d 1265, 1268 & n.3 (M.D. Fla. 2007) (noting no appellate decisions addressing the issue and construing "examination" to mean CIS' interview of

applicant) (citing cases); El-Azhari v. Gonzales, No. 8:06-cv-2033-T-30TGW, slip op. at 3-4 (M.D. Fla. Jan. 31, 2007) (attached as Ex. 1); Odeh v. Chertoff, No. 6:06-cv-367-Orl-19KRS, slip op. at 4-5 (M.D. Fla. Sept. 14, 2006) (attached as Ex. 2).

Courts declining to construe an "examination" as a process have done so for two primary reasons. First, section 1447(b) refers to "the date on which the examination is conducted, . . . which indicates that the examination is conducted on one day, not as a process." Odeh, slip op. at 4-5.[1] Second, CIS' administrative regulations prescribe that a "decision to grant or deny an application shall be made at the time of the initial examination or within 120-days after the date of the *initial* examination," although section 1447(b) refers only to an "examination." Odeh, slip op. at 5 (quoting 8 C.F.R. § 335.3(a)) (emphasis added).

Defendants respectfully posit that, "looking to the statutory and regulatory framework as a whole," the term "examination" is best interpreted as referring to a process rather than a single event. Walji, 2007 WL 1747911, at *2 . Doing so gives full force to 8 C.F.R. § 335.2, which bars CIS from adjudicating a naturalization application in the absence of a completed name check, and to Congress' "clear[]" intent that the FBI's "security investigation . . . occur before [CIS'] examination take place." Id. Thus, under this construction, the 120-day period in this case began to run on June 25, 2007,

---

[1] This contrasts with the description of an examination in section 1446(b), which describes a variety of information-gathering steps which CIS may take and which would almost certainly not be completed in a single day. See 8 U.S.C. § 1446(b).

5

when the FBI completed its background check, and CIS has 120 days from then to adjudicate Plaintiff's application before she can pursue any cause of action.[2]

### B. No Jurisdiction under the Mandamus Act or APA

Plaintiff attempts to invoke this court's jurisdiction under the Mandamus Act and the APA fail because 8 U.S.C. § 1447(b)'s jurisdictional limit supplants these statutes. See Ardestani v. INS, 502 U.S. 129, 133-34 (1991) (finding that Congress intended the Immigration and Nationality Act to supplant rather than supplement the APA in immigration proceedings) (citing Marcello v. Bonds, 349 U.S. 302 (1955)); Danilov v. Aguirre, 370 F. Supp. 2d 441, 445 (E.D. Va. 2005) (finding no APA or Mandamus Act jurisdiction to hear delayed naturalization claim because "it is well settled that general grants of jurisdiction may not be relied upon to expand a very specific statute that either grants or limits jurisdiction").

### C. No Jurisdiction over the FBI

Plaintiff seeks to compel the FBI "to perform [its] duty to adjudicate the Application." Complaint, Prayer, ¶ 2. While the FBI owes no actionable duty to Plaintiff, Shalabi v. Gonzales, No. 06-866, 2006 WL 3032413, at *5 (E.D. Mo. 2006), the Court need not reach that issue because Plaintiff's claim against the FBI is moot. The Bureau

---

[2] As is the case here, in virtually all delayed naturalization decisions of which the undersigned is aware, CIS interviewed the applicant before the FBI name check was completed, which contravenes 8 C.F.R. § 335.2's requirement that CIS interview the applicant "only after" the name check's completion. That events did not occur in their proper sequence, however, should be a non-factor. See Walji, 2007 WL 1747911, at *2 (noting that CIS interviewed applicant while name check pending but stating that court "will not upset the statutory and regulatory scheme because things occurred out of order"). CIS has since stopped interviewing applicants until all background checks have been completed. 4/25/06 CIS Inter-office Memorandum (attached as Ex. 3).

has completed the name check and can take no further action in connection with her application.

### III.     If the Court Finds it Has Jurisdiction, Remand Is the Best Course

If the court finds jurisdiction to proceed, it should decline to rule on the merits of Plaintiff's naturalization claim and instead remand the matter to CIS, pursuant to 8 U.S.C. § 1447(b), which expressly gives the district court discretion to "remand the matter, with appropriate instructions, to [CIS] to determine the matter." See Odeh, slip op. at 5 ("Ordinarily, 'a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.'") (quoting INS v. Ventura, 537 U.S. 12, 16 (2002)).

"This rule is strongly adhered to in the immigration context," id., for two reasons. "CIS has the experience and expertise in making [the naturalization] assessment - and more generally, in determining whether an applicant meets all of the various criteria for naturalization - while the Court has neither." Khelifa v. Chertoff, 433 F. Supp.2d 836, 844 (E.D. Mich. 2006); El-Dauor v. Chertoff, 417 F. Supp.2d 679, 684 (W.D. Pa. 2005). And "any subsequent judicial review – a function that *does* lie within the Court's experience and expertise – would be considerably aided by an agency analysis and explanation as to why it acted as it did on Plaintiff's application." Khelifa, 433 F. Supp. 2d at 844. Thus, courts have regularly remanded naturalization lawsuits, like Plaintiff's, to CIS when the name check remains pending.[3] Where, as here, the name check has

---

[3]See, e.g., Hussein, 474 F. Supp. 2d at 1269; Odeh, slip op. at 6-7; Andron v. Gonzales, — F. Supp. 2d —, 2007 WL 1531855, at *4 (W.D. Mo. May 21, 2007); Qiang Wang v. Gonzales, No. 07-165, 2007 WL 1299871, at *2-3 (S.D. Cal. Apr. 30, 2007); Manzoor v. Chertoff, 472 F. Supp. 2d 801, 808-09 (E.D. Va. 2007); Shalabi, 2006 WL 3032413, at *5; Khelifa v. Chertoff, 433 F. Supp. 2d 836, 844 (E.D.
(continued...)

been completed, judicial deference is all the more appropriate to allow CIS to analyze the name check results, determine whether any follow-up inquiries are necessary, and, if not, adjudicate Plaintiff's application.

## **CONCLUSION**

For the foregoing reasons, the court should dismiss Plaintiff's mandamus action, or, alternatively, remand it to CIS.

Respectfully submitted,

**JAMES R. KLINDT**
Acting United States Attorney

| | |
|---|---|
| OF COUNSEL: | By: s/ Javier M. Guzman |
| | **JAVIER M. GUZMAN** |
| Linda D. Hopkins | Assistant United States Attorney |
| Associate Area Counsel | USAO No: 093 |
| U.S. Dept. of Homeland Security | 400 North Tampa Street, Suite 3200 |
| | Tampa, Florida 33602 |
| | Telephone: (813) 274-6083 |
| | Facsimile:  (813) 274-6200 |
| | E-Mail: Javier.Guzman2@usdoj.gov |

---

[3](...continued)
Mich. 2006); El-Daour, 417 F. Supp. 2d 679, 683-84 (W.D. Pa. 2005).

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 5, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Ignacio J. Garcia, Esq.
Ogletree, Deakins, Nash, Smoak & Steward, PC
100 N. Tampa Street, Suite 3600
Tampa, FL 33602
Ignacio.Garcia@ogletreedeakins.com


                                          s/Javier M. Guzman
                                          **JAVIER M. GUZMAN**
                                          Assistant United States Attorney